# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-527-RJC-DCK

| | |
|---|---|
| BENJAMIN F. CLARK, JR., | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| ZENTA and SUSAN O'ROURKE, | ) |
| Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Complaint" (Document No. 9). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the motion, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Plaintiff Benjamin F. Clark Jr. ("Plaintiff" or "Clark") filed the Complaint (Document No. 1) in this action on October 21, 2010, against Defendants Zenta Mortgage Services, LLC ("Zenta") and Susan O'Rourke ("O'Rourke")(collectively "Defendants"), alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, and asserting claims for: discrimination (race); neglected hiring; gross negligence; neglected conduct; defamation of character and slander; co-employment; mental abuse; intentional affliction of emotional distress; verbal abuse; violation of right to earn a fair wage; harassment; wrongful termination; defamation of character and slander; and outrageous conduct. (Document No. 1, pp.4-6).

According to the Complaint, Plaintiff was an employee of Headway Corporate Resources ("Headway") and working at Zenta as a underwriter. (Document No. 1, p.2). Plaintiff was assigned

to Zenta by Headway on or about June 22, 2009, as a temporary employee. (Document No. 1, pp.1-2). On or about December 29, 2009, Plaintiff was told by manager O'Rourke that "he was not in good standing based on his production numbers." (Document No. 1, p.2) The Complaint further provides that O'Rourke explained to Plaintiff that his production was below the average of two (2) loans per day. Plaintiff acknowledges that his production had decreased from an average of 1.59, to 1.44 loans. Id. Purportedly, O'Rourke told Plaintiff on December 29, 2009, that she would be monitoring his progress over the following two weeks. Id.

On December 31, 2009, O'Rourke informed Plaintiff that his contract was being terminated and he was escorted out of the building. (Document No. 1, p.3). On January 4, 2010, Headway's director of human resources confirmed that Plaintiff's contract with Zenta was cancelled. Id. Plaintiff alleges that he filed a discrimination complaint with the EEOC on January 7, 2010. Id. The "Charge Of Discrimination" attached to the Complaint was filed on or about January 22, 2010, and names Zenta as the alleged discriminating party; "the particulars" of the charge state that Plaintiff "was dismissed by my supervisor [O'Rourke] for no reason." (Document No. 1, p.14).

The Complaint states that Plaintiff is a black male who was terminated without an opportunity to improve his production numbers. (Document No. 1, p.3). The Complaint further asserts that a white female employee, Jessica Gibbs, "who although [she] had high production numbers" was placed on a corrective action plan, rather than being terminated. Id. Plaintiff also contends that another white female employee who was brought in as an underwriter was demoted to loan processor, and then promoted back to underwriter. (Document No. 1, p.4). As a result of his termination, Plaintiff contends he had anxiety and panic attacks, restlessness and trouble sleeping. Id. In or about April 2010, Plaintiff was diagnosed with "Adjustment Disorder with Mixed Anxiety and Depressed Mood and prescribed depression and sleep medication." Id.

On July 21, 2010, the EEOC mailed Plaintiff a "Notice Of Right To Sue (Issued On Request)." (Document No. 1, p.7). As noted above, Plaintiff filed his Complaint on October 21, 2010. (Document No. 1). Defendants filed the pending motion to dismiss (Document No. 9) and a memorandum in support (Document No. 10), on December 1, 2010. Plaintiff filed a response (Document No. 11) on December 17, 2010; Defendants filed a reply brief in support of their motion to dismiss (Document No. 13) on December 27, 2010; and then Plaintiff filed a sur-reply brief (Document No. 14) on January 14, 2011. Immediate review of the pending motion and a recommendation for disposition to the presiding district judge is now appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570; see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only

3

> "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendants by their motion contend that "Plaintiff has failed to plead sufficient factual allegations that establish or advance any claim, let alone 'enough facts to state a claim that is plausible on its face.'" (Document No. 10, p.5)(quoting Twombly, 550 U.S. at 570).

**A. Discrimination and Wrongful Termination**

Plaintiff's Title VII claims are premised on the allegation that he was terminated based on his race. (Document No. 1). Regarding the discrimination claims, Defendants argue that they fail because none of the allegedly adverse actions complained of occurred because of Plaintiff's race.

> Title VII makes it "an unlawful employment practice for an employer ... to discharge ... any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000).

Curry v. Philip Morris USA, Inc., 3:08cv609-RJC, 2010 WL 431692 at *3 (W.D.N.C. Feb. 4, 2010). Defendants contend that Plaintiff has failed to state a prima facie case of race discrimination or wrongful discharge because he has failed to show a "connection between race and the adverse

4

employment decision." (Document No. 10, p.6)(quoting <u>Autry v. N.C. Dep't of Human Res.</u>, 820 F.2d 1384, 1385 (4th Cir. 1987). The undersigned agrees.

Plaintiff's own factual allegations assert that he was first "told that he was not in good standing based on his production numbers" and that he was then "terminated due to lack of production." (Document No. 1 pp.2-3). Moreover, Plaintiff admits in the Complaint not only that his production was below average, but that his production number had decreased in December 2009 from 1.59 to 1.44 loans. (Document No. 1, p.2).

Plaintiff suggests that he was discriminated against because Jessica Gibbs was placed on a corrective action plan rather than being terminated. (Document No. 1, p.3). Ms. Gibbs does not appear to be a proper comparator, however, because she actually had high production numbers and was apparently placed on a corrective action plan to address a different issue. <u>Id.</u> Plaintiff also states, based on something Gary French allegedly told Charles Everage, that Shannon Berry, a white female employee, was demoted and then later reinstated as an underwriter for Zenta. (Document No. 1, p.4). The Complaint does not offer any explanation for Berry's personnel changes, or disclose what, if any, problems she had with her production numbers.

As such, Plaintiff offers no more than speculative and conclusory allegations that he was terminated as a result of intentional race discrimination. This Court's observations in <u>Curry</u> are applicable to the instant case:

> Although Plaintiff concludes that her termination resulted in "disparate treatment," she fails to allege specific facts explaining how disparate treatment actually occurred. Plaintiff does not identify the "similarly situated employees" outside of her protected class, nor does she describe the alleged misconduct for which these individuals received no disciplinary action. Thus, these allegations are exactly the kind of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are not entitled to a presumption of truth when testing the sufficiency of Plaintiff's

5

> Amended Complaint. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550
> U.S. at 555).

Curry, 2010 WL 431692 at *3. As in Curry, Plaintiff here has failed to state sufficient facts to support a plausible claim that he was disparately treated or terminated based on his race.

The Curry decision shares another similarity with this case. In Curry, the plaintiff admitted "she violated clear and unambiguous company policy." Id. at *4. In this case, Plaintiff does not contest that his production as an employee was substandard. (Document No. 1). "Common sense dictates that in light of this fact, the Court can draw no more than the 'mere possibility' of discrimination . . . Thus, Plaintiff has failed to plausibly show that she is entitled to relief under Title VII...." Curry, 2010 WL 431692 at *4 (citations omitted).

> The North Carolina Supreme Court has held that the evidentiary standards used in Title VII cases are also applicable in wrongful-discharge cases because the ultimate purpose of both Title VII and the NCEEPA is "the elimination of discriminatory practices in employment." N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). . . . The Fourth Circuit Court of Appeals and the Middle District have consistently held that a plaintiff's failure to demonstrate his discrimination claim under Title VII will also result in dismissal of a North Carolina wrongful-discharge claim arising out of the same facts and circumstances.

Jones v. Southcorr, L.L.C., 324 F.Supp.2d 765, 782 (M.D.N.C. 2004).

Based on the foregoing, including Plaintiff's failure to state a plausible claim for relief on his claim of race discrimination, the undersigned will recommend that both his discrimination and his wrongful termination claims be dismissed.

**B. O'Rourke Claims**

Defendants argue that any discrimination or wrongful discharge claims against O'Rourke must be dismissed because individual supervisors have no liability under Title VII. (Document No. 10, p.9)(citing Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) and N.C.Gen.Stat.

§ 143-422.2). Plaintiff's responses have failed to make a persuasive argument or cite relevant authority refuting Defendants' position. (Document Nos. 11-1, 14). Based on the foregoing, as well as Defendants' additional cited authority, the undersigned agrees that claims against O'Rourke for discrimination, harassment, and wrongful termination should be dismissed. (Document No. 10, pp.9-10).

**C. Negligence and Gross Negligence**

The Court will construe *pro se* Plaintiff's claims of "neglected" conduct and "neglected" hiring as claims of negligence, along with his claim of gross negligence. (Document No. 1, p.4-5). For Plaintiff to prevail on claims of negligence he "must establish that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach." Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473 (2002) (citing Hunt v. N.C. Dep't. of Labor, 348 N.C. 192, 499 S.E.2d 747 (1998)). "Gross negligence requires a finding that the conduct is willful, wanton, or done with reckless indifference." Sawyer v. Food Lion, Inc., 144 N.C.App. 398, 403 (2001) (citing Yancey v. Lea, 139 N.C.App. 76, 79 (2000).

Defendants argue, and the undersigned agrees, that "Plaintiff has failed to allege a legal duty, the breach of any legal duty, or any causal connection between his termination" and O'Rourke's alleged job performance or qualifications. Plaintiff has failed to state a plausible claim that Zenta or O'Rourke were negligent or grossly negligent. The undersigned will recommend that Plaintiff's negligence claims be dismissed.

**D. Emotional Tort Claims**

Plaintiff also alleges claims for mental abuse and intentional affliction of emotional distress. (Document No. 1, p.5). The Court will construe these together as a claim for intentional infliction

of emotional distress. "The essential elements of an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" Waddle v. Sparks, 331 N.C. 73, 82 (1992)(quoting Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325 (1981)). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Smith-Price v. Charter Behavioral Health Systems, 164 N.C.App. 349, 354 (2004)(quoting Briggs v. Rosenthal, 73 N.C.App. 672, 677 (1985).

Plaintiff contends that as a result of his termination, he has suffered: a loss of confidence, sleep problems, anxiety and panic attacks, and restlessness. (Document No. 1, p.4). Plaintiff has not persuasively alleged the kind of conduct by either Defendant that courts typically recognize as "extreme and outrageous."

> North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim. Haburjak v. Prudential-Bache Sec. Inc., 759 F.Supp. 293, 302-03 (W.D.N.C. 1991). A termination, allegedly in violation of federal law alone, does not constitute extreme and outrageous conduct. Conduct that is considered "intemperate" will not ordinarily be sufficient to state a claim for intentional infliction of emotional distress. See Buser v. Southern Food Serv., Inc., 73 F.Supp.2d 556, 573 (M.D.N.C.1999). Further, under North Carolina law, acts of discrimination are not necessarily "extreme and outrageous." See Frazier v. First Union Nat'l Bank, 747 F.Supp. 1540, 1553 (W.D.N.C.1990) (holding that allegations of race and sex discrimination did not show extreme and outrageous conduct under North Carolina law).

Jackson v. Blue Dolphin Communications of North Carolina, L.L.C., 226 F.Supp.2d 785, 794 (2002).

Even if the Court liberally construed Plaintiff's claims as being for negligent infliction of emotional distress, he still fails to state a claim upon which relief may be granted. "To establish a claim for negligent infliction of emotional distress, the plaintiff must prove that '(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress.'" Smith-Price, 164 N.C.App. at 354 (quoting Johnson v. Ruark Obstetrics, 327 N.C. 283 (1990)).

Again, Plaintiff has failed to assert sufficient factual content to support plausible claims for intentional or negligent infliction of emotional distress. As such, the undersigned will recommend that Plaintiff's claims of emotional suffering and/or abuse be dismissed.

**E. Defamation**

The Complaint includes two claims for "Defamation of Character and Slander." (Document No. 1, pp.5-6). One claim contends that O'Rourke's performance review "slandered the plaintiff," and the other asserts that Zenta HR Manger Terri Hand ("Hand") wrote untrue and slanderous statements about the plaintiff in the course of the EEOC's investigation. Id.

"The elements of defamation are well known: there must be (1) a publication that is both (2) defamatory and (3) false." Suarez v. Charlotte-Mecklenburg Schools, 123 F.Supp.2d 883, 892 (W.D.N.C. 2000) (citing Long v. Vertical Technologies, Inc., 113 N.C.App. 598, 601 (1994)).

Plaintiff again fails to state plausible claims. Even construing his pleading liberally, Plaintiff fails to support the basic elements of a defamation claim – that Hand or O'Rourke made statements that were defamatory and false. In fact, the crux of the statements are that Plaintiff was terminated based on his low production numbers. (Document No. 1, pp.10-12, 17). The undersigned finds that the statements in question are consistent with Plaintiff's version of the facts; moreover, they support

9

Defendants' position that the reasons for Plaintiff's termination were related to his job performance, not his race. Id.

Based on the foregoing, as well as Defendants' additional arguments, the undersigned will recommend that Plaintiff's defamation claims be dismissed.

**F. Other Claims**

Defendants contend that Plaintiff's remaining claims, including co-employment, verbal abuse, violation of right to earn a fair wage, and outrageous conduct, fail to plead cognizable legal claims. (Document No. 10, p.17). In support they cite a Fourth Circuit decision opining that:

> While pro se complaints may "represent the work of an untutored hand requiring special judicial solicitude," a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir.1985), cert. denied, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). The "special judicial solicitude" with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.

Weller v. Dep't. of Social Services for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). The undersigned finds that Plaintiff's remaining claims fail to meet the basic pleading requirements and should be dismissed.

The undersigned also notes that Plaintiff's response and sur-reply allege that Defendants' counsel David C. Wright "has committed four felonies during the pre-trial motion phase" of this case. (Document No. 11-1, p.3; Document No. 14, p.3). Specifically, Plaintiff alleges that Mr. Wright has forged his father's signature. This allegation appears to be based on the fact that on certain documents Mr. Wright's name appears on the signature line as David C. Wright II, instead of David C. Wright III. This inconsistency is easily explained away as a typographical error and has

no impact on this case. Plaintiff's allegations of forgery, perjury, or any other crime based on these facts is nonsensical and frivolous.

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that Plaintiff's lawsuit should be dismissed. Plaintiff's Complaint and attachments support Defendants' position that the reasons for Plaintiff's termination were unrelated to his race. Plaintiff has failed to assert sufficient facts for the Court to reach any other conclusion.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion To Dismiss Complaint" (Document No. 9) be **GRANTED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* Plaintiff, counsel for Defendants and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: February 22, 2011

David C. Keesler
United States Magistrate Judge